## UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

In re

**HORNBLOWER HOLDINGS**, LLC *et al.* [1]

**Chapter 11**
**Case No. 24-90061 (MI)**

**Adversary Proceeding No. 24-03029**

Debtors.

--------------------------------------------------------x

**THERESA VANBUREN, MONICA MILLER,**
**CAPTAIN BERTRAND M. SUAREZ, and**
**CAPTAIN JOHN COOK on behalf of themselves**
**and all others similarly situated,**

**Plaintiffs,**

**v.**

**American Queen Steamboat Operating Company,**
**LLC,** *et al.,*

**Defendants**.

-------------------------------------------------------------------

---

### JOINT MOTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 7023 AND 9019 TO (I) APPROVE A SETTLEMENT PURSUANT TO FED. R. BANKR. P. 9019, (II) PRELIMINARILY APPROVE THE SETTLEMENT PURSUANT TO FED. R. BANKR. P. 7023, (III) APPROVE THE FORM AND MANNER OF SETTLEMENT NOTICE TO CLASS MEMBERS, (IV) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT, (V) FINALLY APPROVE THE SETTLEMENT PURSUANT TO FED. R. BANKR. P. 7023 AFTER THE FAIRNESS HEARING, AND (VI) GRANT RELATED RELIEF

---

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

The above-captioned Plaintiffs, Theresa VanBuren, Monica Miller, Captain Bertrand M. Suarez and Captain John Cook (the "Plaintiffs"), on behalf of themselves and the Settlement Class, defined herein, together with Hornblower Group Holdco, LLC, as Administrator of AQV Wind Down Co., successor in interest to American Queen Steamboat Operating Company, LLC, ("Defendant" and together with Plaintiffs, the "Parties"), by and through their respective counsel, have reached a fair settlement of the claims against the Defendant in this matter under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (the "WARN Act"), and respectfully state in support of this Joint Motion as follows:

**Preliminary Statement**

1.      This Court should approve the Settlement and Release Agreement (the "Settlement Agreement" or the "Settlement")[2] as it is in the best interest of the Plaintiffs, the Debtor Defendants, and the creditors. The Settlement Agreement resolves a complex, multifaceted litigation that would require extensive additional discovery, is well within the "lowest level of reasonableness", and saves the Defendant litigation costs.

2.      On or about February 23, 2024, and thereafter, Plaintiffs commenced separate adversary proceedings (the above-captioned adversary proceeding, commenced by Theresa VanBuren and Monica Miller, as well as Adversary Proceeding No. 24-03037, commenced by Captain Bertrand M. Suarez and Captain John Cook) which were consolidated in this matter through the filing of the Plaintiffs' Second Amended Class Action Adversary Proceeding Complaint (the "Action"). Plaintiffs assert claims against the Debtor Defendants under the WARN Act for recovery of damages in the amount of 60 days' pay and ERISA benefits for alleged

---

[2] A true copy of the Settlement Agreement is attached hereto as Exhibit A. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement, and in the event of any conflict between these documents, the definitions in the Settlement Agreement shall control.

violations of the WARN Act. In the Action, Plaintiffs assert that they and the other similarly situated employees are "aggrieved employees" as defined by the WARN Act, who were affected by a mass layoff and/or plant closing that occurred on or about February 20, 2024, and within 30 days thereof, ordered by the Debtor Defendants, as a "single employer" without the provision of the required advance notice. Further, the Plaintiffs assert the Debtor Defendants' failure to give the Settlement Class Members the required advance written notice of termination entitles Settlement Class Members to recover 60 days of pay and ERISA benefits from the Debtor Defendants. Plaintiffs also asserted that the WARN Act damages due to the seamen within the Settlement Class should be deemed wages subject to the Seaman's Wage Act such that the amount owed to Subclass Members should be doubled for each day by which payment was delayed. Plaintiffs assert that unpaid wages, salaries, and benefits owed to seamen are secured by a lien on the various vessels on which the seamen were employed.

3.      The bar date in this matter was May 23, 2024.  By that date, Plaintiffs filed a Class Proof of Claim as well as more than 130 individual Proofs of Claim asserting the claims raised in the Action.

4.      Class Counsel has calculated the priority portion of Debtor Defendants' alleged WARN Act liability of sixty (60) days' pay at approximately $4.5 million. In exchange for each Settlement Class Member's release of claims arising out of the termination of their employment, the Settlement provides that the Defendant shall pay $2,825,000 (the "Total Settlement Fund") to a Qualified Settlement Fund ("Qualified Settlement Fund" or "QSF") established by the Administrator, who will, in turn, distribute the Total Settlement Fund in accordance with the terms of the Settlement Agreement.

5.      From the perspective of the Defendant, who, pursuant to the Plan was granted the

authority to settle disputed claims against the Debtor Defendants, the Settlement Agreement is fair and reasonable, though the Defendant denied and continues to deny Plaintiffs' allegations in the Action. Following the filing of the Action, the Parties exchanged information and negotiated in good faith and at arms' length. The Parties attended a mediation at defense counsel's Charlotte, North Carolina office on August 27, 2024. As a result of the negotiations at the mediation, conducted under the guidance of a seasoned mediator, and for weeks thereafter, and in an attempt to avoid further costly litigation and the uncertainties and risks associated therewith, the Parties agreed to enter into the Settlement Agreement, which includes certification of a proposed Settlement Class. Accordingly, the Court should approve the Settlement Agreement under Bankruptcy Rule 9019.

6.      For essentially the same reasons, the Settlement Agreement is also fair and reasonable to the Settlement Class Members. Without the settlement, the Settlement Class Members could wait years for any payment on their alleged WARN Act claims, even if they were to prevail at trial and on appeal, and risk further depletion of the Defendant's remaining assets through continued administrative and litigation costs.

7.      Finally, the Parties request a two-step approval process to facilitate notice of the Settlement to the Settlement Class Members. After preliminary approval of the Settlement Agreement and the form of notice to be mailed to the Settlement Class Members, the Administrator will provide the notice (the "Notice"), substantially in the form annexed to the Agreement as Exhibit 1 to each Settlement Class Member that describes the Settlement Agreement, and informs the Settlement Class Members of their right to object to or opt-out of the Settlement Agreement and of the deadline for objecting or opting out.

8.      After the Notice Period has elapsed, the Parties request that the Court hold a fairness

FP 52897623.2
FP 53017008.1

hearing (the "Fairness Hearing") to consider final approval of the Settlement Agreement, which shall not be scheduled until at least 100 days after the filing of this Joint Motion pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d).

9.      Based on the foregoing, and as set forth more fully below, the Parties submit that the Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

## RELIEF REQUESTED

By this Joint Motion, the Parties request that the Court enter orders, substantially in the form annexed hereto as Exhibits B and C: (i) preliminarily approving the Settlement Agreement among the Parties pursuant to Bankruptcy Rule 9019 and certifying the Settlement Class pursuant to Bankruptcy Rule 7023, which incorporates Rule 23 of the Federal Rule of Civil Procedure (the "Civil Rules"); (ii) approving the form and manner of the Notice, substantially in the form annexed to the Agreement as Exhibit 1; (iii) scheduling a Fairness Hearing to consider final approval of the Settlement Agreement; and (iv) approving the Settlement Agreement on a final basis.

## JURISDICTION

10.      The Court has jurisdiction over this Joint Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408. The statutory predicates for the relief sought herein are Section 105 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 9019 and 7023.

## BACKGROUND

11.      The Defendant's prepetition business included overnight cruising and land- and water-based experiences.

5

12.     On or about February 20, 2024, Defendant terminated the employment of substantially all of its employees.

13.     On February 21, 2024, Hornblower Holdings, LLC and more than 100 affiliated entities, including Defendant, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.

14.     On February 23, 2024, and as amended thereafter, Theresa VanBuren and Monica Miller (the "VanBuren Plaintiffs") filed an action alleging violations of the WARN Act. VanBuren Plaintiffs alleged that they and other similarly situated employees were owed damages in the amount of 60 days' pay and benefits by reason of Defendant's failure to provide the required notice of a mass layoff and/or plant closing that occurred on or about February 20, 2024, pursuant to the WARN Act.

15.     On March 5, 2024, Captain Bertrand M. Suarez and Captain John Cook (the "Suarez Plaintiffs") filed an Adversary Proceeding in this Court alleging violations of the WARN Act and the Seaman's Wage Act, 46 U.S.C. § 10101 *et seq*. The Suarez Plaintiffs alleged that they and other similarly situated employees were owed damages in the amount of 60 days' back pay and benefits, and, for certain class members (the putative "Seaman Subclass"), penalties pursuant to the Seaman's Wage Act, by reason of Debtor Defendants' failure to provide the required notice of a mass layoff and/or plant closing on or about February 20, 2024, pursuant to the WARN Act. Additionally, the Suarez Plaintiffs sought a declaratory judgment that the claims of the Suarez Plaintiffs and similarly situated employees were entitled to be recognized as administrative expense claims or, alternatively, wage priority claims and that those sums owed to the Seaman Subclass be secured by a first-priority lien encumbering the seven American Queen Vessels.

16.     On or about March 5, 2024, the Official Committee of Unsecured Creditors (the

FP 52897623.2
FP 53017008.1

"Committee") was appointed in this matter by the Office of the United States Trustee. A non-Plaintiff WARN representative, represented by Class Counsel, was appointed to the Committee to represent the WARN Act claimants.

17.     On March 18, 2024, and as amended thereafter, Debtor Defendants filed the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Hornblower Holdings LLC and Its Debtor Affiliates* (Doc. 269) (the "Disclosure Statement") and the *Joint Chapter 11 Plan of Reorganization of Hornblower Holdings LLC and Its Debtor Affiliates* (Doc. 268) (the "Plan").

18.     On or about March 31, 2024, the Van Buren Plaintiffs and the Suarez Plaintiffs notified Debtor Defendants of their agreement to jointly prosecute the WARN Act claims in a single proceeding and their intent to file a unified, amended complaint in this matter.

19.     In or about March 2024, the Parties began informal attempts to resolve the WARN Act claims.

20.     On or about April 3, 2024, the Parties stipulated, for purposes of efficiency, to adjourn Defendant's response deadlines until Plaintiffs filed an amended, consolidated complaint and following further discussion among the Parties as to scheduling.

21.     On April 4, 2024, the VanBuren Litigation and the Suarez Litigation were abated by Order of the Court following the filing of the Parties' stipulations concerning the adjournment of any response deadlines.

22.     On April 8, 2024, Plaintiffs filed a limited objection and reservation of rights (the "Objection") to the adequacy of the Disclosure Statement, asserting that the Disclosure Statement failed to address their WARN claims and the Plan likewise did not establish an adequate claims

FP 52897623.2
FP 53017008.1

reserve for the WARN Plaintiffs' priority wage claims. Further, Plaintiffs provided notice of their election not to grant (i.e., to opt out of) the releases set forth in Article IX of the Plan.

23.     Prior to the April 12, 2024 hearing on the Disclosure Statement, Plaintiffs worked with Debtor Defendants' counsel concerning an amendment to the Disclosure Statement which resolved Plaintiffs' Objection. At the hearing, the Court conditionally approved the Disclosure Statement and set the hearing on confirmation of the Plan for June 3, 2024.

24.     On May 14, 2024, the Suarez Plaintiffs, the VanBuren Plaintiffs, and Debtor Defendants filed a Joint Stipulation of No Objection ("Stipulation") requesting to consolidate the VanBuren Litigation and the Suarez Litigation via the Second Amended Complaint in this matter, filed on May 14, 2024, and dismissal of the Suarez Action.

25.     As part of the Stipulation, the Parties acknowledged that they were engaged in settlement discussions and, in the interest of efficiency and judicial economy, agreed that the matter should remain abated pursuant to the Order dated April 4, 2024 (Doc. 121) until any party moved to terminate the abatement. The Parties further agreed that during the abatement, any and all deadlines applicable to this proceeding would be abated, including without limitation any deadline to file a motion for class certification. Following the termination of the abatement, the Parties agreed to promptly meet and confer concerning: (a) a deadline, no fewer than 21 days after the Court lifted the abatement of this proceeding, for Debtor Defendants to move to dismiss or otherwise respond to the amended complaint, as well as a briefing schedule for any motions to dismiss and (b) a deadline, no fewer than 21 days after the Court lifted the abatement of this proceeding, for the filing of a WARN Act class certification motion. The Parties also agreed in the Stipulation that any proof of claim filed by Plaintiffs' counsel on behalf of any former employee against Debtor American Queen Steamboat Operating Company, LLC relating to claims asserted

as part of the  Action shall be deemed to be a proof of claim against all Debtor Defendants; *provided,* that the Debtor Defendants reserve all rights with respect to any available defenses to such claims (other than any defense relating to the Parties' agreed filing procedure). The Stipulation was approved by the Court on May 15, 2024.

26.     During the ensuing months, the Parties continued their informal efforts to resolve this matter.  In July, the Parties agreed to engage in a formal mediation, and by early August, the Parties selected Allen S. Blair, Esquire ("Mediator Blair"), a neutral and experienced class action mediator, to mediate this matter.

27.     On August 27, 2024, the Parties mediated before Mediator Blair.  The Parties were unable to reach an agreement at mediation.  Several weeks of negotiations followed, facilitated by Mediator Blair, that culminated with a mediator's proposal that the Parties accepted in principle on or about October 3, 2024, to settle the Action on the terms set forth within this Agreement, subject to Court approval.

**THE SETTLEMENT AGREEMENT**

28.     In general, and in resolution of the Action, the Settlement Agreement provides for Defendant's payment of a Total Settlement Fund in the amount of $2,825,000.00 into a Qualified Settlement Fund within fifteen (15) days of the Final Approval Order becoming Final and no longer subject to appeal or Writ of Certiorari ("Tender Date").   Other material terms of the Settlement Agreement include:[3]

  a.     Settlement Distribution: The Settlement Administrator shall be responsible for mailing the Notice to Settlement Class Members and for all aspects of the administration of the distribution of the Total Settlement Fund, including, but not limited to, (a) the formation of a qualified settlement fund

---

[3] This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement. To the extent that there are any inconsistencies between the description of the Settlement Agreement contained herein and the terms and the provisions of the Settlement Agreement, the Settlement Agreement shall control.

(the "<u>Qualified Settlement Fund</u>" or "<u>QSF</u>") as authorized by Treasury Regulation 1.468B-1(c) to accept, distribute, and otherwise administer the Settlement, including wiring Class Counsel's Fees and Class Counsel's Expenses to Class Counsel, according to such wiring instructions that Class Counsel will provide to the Settlement Administrator; (b) the determination of all applicable taxes and withholding amounts for each Settlement Class Member based on the Pre-Tax amounts shown on Schedule 1 to the Settlement; (c) the preparation and mailing of settlement checks to each Settlement Class Member; (d) the withholding, transmittal, and reporting of all payroll taxes, and preparing and mailing of all W-2 Forms and/or 1099 Forms, where applicable, and (e) the processing of returned settlement checks as undeliverable, including re-mailing to forwarding addresses and tracing of current addresses. Within seven (7) calendar days of entry of an Order granting preliminary approval of the Settlement, the Defendant shall securely provide the Settlement Administrator with the Class Data List. This data shall be based on Defendant's payroll and/or other business records and shall be used to send the Notice to Settlement Class Members following preliminary approval of the Settlement. The Settlement Administrator shall provide the approved notice to each Settlement Class Member within fifteen (15) calendar days following entry of the order preliminarily approving the Settlement Agreement. The Notice describes the Settlement Agreement and informs the Settlement Class Members of their right to opt-out of or object to the Settlement Agreement and identifies the deadline for doing so. The projected pre-tax amounts allocated to the Settlement Class Members from the Total Settlement Fund are set out on <u>Schedule 1</u> attached to the Settlement Agreement. The Settlement Class Members' settlement distributions shall be included under the Settlement Class Member's name and social security number on a W-2 Form and any applicable state or local tax form to be distributed by the Settlement Administrator. The Service Payments, Class Counsel's Fees and Class Counsel's Expenses shall be reflected on IRS Form 1099s to be distributed by the Settlement Administrator. By accepting his or her portion of the Total Settlement Fund, each Settlement Class Member agrees that he or she will be solely responsible for any and all tax liabilities stemming from the payment of his or her claim under the Settlement Agreement.

b.  <u>Releases:</u> Upon the Effective Date of the Settlement, all Settlement Class Members who do not submit a valid and timely request for exclusion from the Settlement, regardless of whether they cash or otherwise negotiate their settlement check, will release and forever discharge the Released Parties from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity or otherwise, whether known or unknown, anticipated, suspected or disclosed, which the Settlement Class Members may now have or hereafter have against the Released Parties, arising out of the termination of the employment of the Settlement Class

FP 52897623.2
FP 53017008.1

Members, including, but not limited to (a) all claims asserted or that could have been asserted in the Action, (b) any alleged violation of the WARN Act or Seamans' Wage Act or (c) any other claims for backpay, severance pay or other termination payments or benefits based on or arising out of any federal, state or local statute, ordinance, regulation, common law, contract or otherwise. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for res judicata purposes shall be co-extensive with this release of claims (collectively, the "Settlement Class Members' Released Claims"). Named Plaintiffs, on behalf of themselves and the other Settlement Class Members, also hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that Named Plaintiffs or other Settlement Class Members have or may have against Defendant for attorneys' fees, costs, or expenses associated with this Litigation, including but not limited to those attorneys' fees, costs, or expenses associated with Class Counsel's representation of the Named Plaintiffs and Settlement Class Members in this Litigation. Named Plaintiffs further understand and agree that any fees and costs payment provided for in the Settlement Agreement, as approved by the Court, will represent the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Class Counsel's representation of Named Plaintiffs and the Settlement Class Members in this Litigation.

c.   <u>Service Awards:</u> The Settlement Class Representatives shall each receive a one-time service payment of $10,000.00 from the Total Settlement Fund for their service on behalf of the Settlement Class Members ("<u>Service Awards</u>") and in exchange for a general release of claims, as a reasonable service award. The Service Awards will be made in addition to the Class Representatives' individualized settlement amounts.

d.   <u>Class Counsel Fees:</u> Class Counsel shall receive payment in the amount of one-third (1/3) of the Total Settlement Fund ("<u>Class Counsel's Fees</u>"), plus litigation costs and expenses related to the Action ("<u>Class Counsel's Expenses</u>"). Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter. The Administrator's Fees and Costs shall also be paid as an expense from the Total Settlement Fund.

e.   <u>Issuance of Notice of Settlement to the Class:</u> The Settlement Administrator shall send by first class mail to each Settlement Class Member's last known address an individualized Notice indicating:

- A description of the history of the litigation and the essential terms of the Settlement;

- that the Settlement shall become effective only if it is finally approved by the Court;

11

- that, if so approved, the Settlement shall be effective as to all Settlement Class Members who do not send a timely and valid request for exclusion;

- that, if so approved, the projected pre-tax dollar amount allocated to each Settlement Class Member under the Settlement, net of the Service Awards, Class Counsel's Fees, Class Counsel's Expenses and the Settlement Administrator's Fees and Costs as shown on <u>Schedule 1</u>;

- that such Settlement Class Member has the right to opt-out or object to this Settlement in person or through counsel and be heard at the Fairness Hearing; and

- that all Released Claims shall be waived, and that no person, including the Settlement Class Member, shall be entitled to any further distribution thereon (other than those claims to be paid under the terms of this Settlement).

**<u>BASIS FOR RELIEF REQUESTED</u>**

A.  **The Court Should Approve the Settlement Agreement**
    **<u>Pursuant to Bankruptcy Rule 9019</u>**

29.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, equitable, and in the best interest of the estate. *See Official Comm. of Unsecured Creditors v. Moeller (In re Age Refin., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, approval of a compromise is within the sound discretion of the bankruptcy court. *See, e.g., United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602–03 (5th Cir. 1980). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated and costly." *Jackson Brewing Co.*, 624 F.2d at 602. Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, FED. R. BANKR. P. 9019(a), and Section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate". 11 U.S.C. § 105(a).

30.     In the Fifth Circuit, courts consider the following factors in determining whether to approve a proposed settlement: a) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; b) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and c) all other factors bearing on the wisdom of the compromise, including (i) the best interests of creditors and (ii) the extent to which the settlement is the product of arm's-length bargaining. *See Age Refin. Inc.*, 801 F.3d at 540; *see also Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917–918 (5th Cir. 1995) (stating that the court should consider "the paramount interest of creditors with proper deference to their reasonable views" and the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion").

31.     Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

a.     **Application of the 9019 Factors**

i.     *The Results of a Trial are Uncertain and the Litigation is Complex.*[4]

32.     The results of a trial are uncertain, and the litigation is complex. The WARN Act Litigation involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, *inter alia*, (a) whether the Debtor Defendants constitute a "single employer" under the provisions of the WARN Act such that they would be jointly and severally liable for some or all of the alleged damages, (b) whether Defendant was a covered employer under the WARN Act at the time of the alleged plant closing

---

[4] This section discusses both the first and second factors.

FP 52897623.2
FP 53017008.1

or mass layoff pursuant to the liquidating fiduciary doctrine; (c) whether the Defendant provided adequate notice to the Settlement Class Members under the WARN Act; (d) whether the purported WARN Act notice was defective under the WARN Act; (e) whether the Defendant was entitled to give fewer than sixty (60) days' notice because of the unforeseeable business circumstances that caused the Defendant to fail; (f) whether the Defendant was entitled to give fewer than sixty (60) days' notice because, at the time notice would otherwise have been required, it was seeking new capital it reasonably believed, if obtained, would have obviated the need for or substantially postponed the alleged plant closing or mass layoffs; (g) whether the Defendant's efforts to obtain new capital were commercially reasonable under the circumstances; (h) whether the Defendant has other defenses to the application of the WARN Act; (i) whether the Defendant gave "as much notice as practicable"; (j) whether all Settlement Class Members worked at a "single site of employment" that was subject to a "plant closing" or "mass layoff"; (k) the computation of the amount of damages, including whether the Seamen Subclass was entitled to penalties pursuant to the Seaman's Wage Act, whether the claims were administrative expense claims or, alternatively, wage priority claims and whether the sums owed to the Seaman Subclass were secured by a first-priority lien encumbering the seven American Queen Vessels, and (l) whether the Defendant is entitled to any reduction of damages based on "good faith".

33.     Continued litigation would be costly and time-consuming and expose the Debtor Defendants to significant litigation risk. Class Counsel has asserted that the WARN Act liability of sixty (60) days' damages and benefits is in excess of $6 million. The Settlement provides for the payment of a Total Settlement Fund of $2,825,000. The Settlement resolves the  Action and related claims and eliminates further accrual of substantial litigation expenses. Accordingly, the

FP 52897623.2
FP 53017008.1

Parties respectfully submit that approval of the Settlement is warranted.[5]

> ii.    _The Settlement Agreement is in the Best Interest of Creditors and the Estates_.

34.    The Settlement Agreement is in the best interests of the Debtor Defendants' creditors and estates.

35.    The Settlement Agreement, which was the product of a mediation and months of extensive arm's-length negotiations, spares Plaintiffs and the Debtor Defendants' estates the significant expense and uncertainty associated with the litigation of the myriad of issues in the WARN Act Litigation. For the reasons stated herein, although Defendant denied and continues to deny liability, Defendant respectfully submits that the Settlement Agreement not only constitutes a sound exercise of the Defendant's business judgment, but also represents a fair and equitable compromise under Bankruptcy Rule 9019(a) that is in the best interest of the Debtor Defendants' creditors and estates. If approved, the Settlement Agreement will resolve the Settlement Class Members' claims relating to their terminations against Defendant and the other Released Parties (as defined in the Settlement Agreement). This certainty with respect to the WARN Act claims will move these chapter 11 cases forward by allowing the Debtor Defendants to focus on other outstanding issues, all without the expense, delay, and distraction of any WARN Act litigation.

36.    Accordingly, in light of each of the 9019 factors, the Settlement Agreement should be approved.

**B.**    The Proposed Settlement Class Meets Each of the Requirements of Fed. R. Civ. P. 23

38.    Where, as in this case, the Court has not already certified a class, before approving a class settlement pursuant to Civil Rule 23, the Court must determine whether the proposed

---

[5] In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties shall revert to their positions _status quo ante_, including Defendant's maintaining all rights and defenses, including the right to contest class certification.

FP 52897623.2
FP 53017008.1

settlement class satisfies the certification requirements of Civil Rule 23.  *See Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3d Cir. 2005).

39.      "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem*, 521 U.S. at 618; *accord Community Bank*, 418 F.3d at 299.  "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification." *Community Bank*, 418 F.3d at 299; *see General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995) ("By specifying certification for settlement purposes only … the court preserves the defendant's ability to contest certification should the settlement fall apart.").

40.      Class certification pursuant to Fed. R. Civ. P. 23 requires that each of the four prerequisites for certification (namely, Fed. R. Civ. P. 23 (a)(1), (2), (3) and (4)) be met and, in addition, that at least one of the conditions set forth in subparts of Fed. R. Civ. P. 23(b) (namely, 23(b)(1), 23(b) (2) <u>or</u> 23(b)(3)) be satisfied.  As noted above, the Parties agree to certification of a settlement class, for settlement purposes only, consisting of the 428 people who are reflected on Schedule 1 to the Settlement, identified by Class Counsel from the Defendant's payroll records, who worked at or reported to the Defendant's facilities and who were separated from employment on or about February 20, 2024, or thereafter as part of, or as the result of, the plant closing or mass layoff(s) occurring at the Defendant's facilities, but excluding any such individuals who submit a timely and valid request for exclusion from the Settlement Class (the "<u>Settlement Class</u>" and each a "<u>Settlement Class Member</u>").  The Parties have agreed for the purposes of the Settlement only[6]

---

[6] Defendant does not concede that certification is appropriate outside of this Settlement and preserves all rights to oppose certification if, for any reason, the Settlement does not become effective as set forth in this Motion.

FP 52897623.2
FP 53017008.1

that all the prerequisites for certification of the proposed Settlement Class are present, as set forth below.

      (a)    **Numerosity**:  For purposes of the Settlement only, the Parties agree that the numerosity factor of Fed. R. Civ. P. 23(a)(1) is met because the proposed Settlement Class is comprised of 428 former employees, making joinder impracticable.

      (b)    **Commonality:**  For purposes of the Settlement only, the Parties agree that the commonality factor of Fed. R. Civ. P. 23(a)(2) is met here because common questions of law and fact are applicable to each Settlement Class Member, namely, 1) whether Defendant was excused from the 60-day notice requirement under the WARN Act; and (2) if not, whether Defendant was obligated to pay some or all of the Settlement Class Members 60 days' pay and benefits.  In short, the Parties agree for purposes of the Settlement only that the Settlement Class Members' claims raise nearly identical issues regarding the circumstances surrounding their layoffs and, thus, the alleged violations of the WARN Act.

      (c)    **Typicality**:  For purposes of the Settlement only, the Parties agree that the typicality factor of Fed. R. Civ. P. 23(a)(3) is met here as "the claims . . . of [Plaintiffs who are] the representative parties are typical of the claims . . . of the class."  The Parties agree for purposes of the Settlement only that the Class Representatives have the same claim based on the same or very similar facts as the other proposed Settlement Class Members.

      (d)    **Adequacy of Class Representatives:**  For purposes of the Settlement only, the Parties agree that the adequacy factor of Fed. R. Civ. P. 23(a)(4) is also met.  The Court should find that the Class Representatives and Class Counsel adequately represent the interests of the Settlement Class Members based on the Declaration of Mary E. Olsen (the "<u>Olsen Declaration</u>") attached as <u>Exhibit D</u> hereto.  As demonstrated by the Olsen Declaration, Class Counsel are well

17

qualified and experienced to represent the Settlement Class Members.  Collectively, they have been appointed as class counsel in more than one hundred WARN actions.  Further, as shown in the Olsen Declaration, the Class Representatives have no conflict of interest with the other proposed Settlement Class Members, and have -- and will continue to -- diligently prosecute, represent and protect the interests of the proposed Settlement Class.

41.     For purposes of the Settlement only, the Parties agree that the proposed Settlement Class also meets the requirements of Fed. R. Civ. P. 23(b)(3).  The Parties agree for purposes of the Settlement only that common questions of law and fact that affect all members of the proposed Settlement Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons: (a) No proposed Settlement Class Member has an interest in individually controlling the prosecution of a separate action under the WARN Act; (b) no other litigation concerning the WARN Act rights of any proposed Settlement Class Member is currently pending to the Parties' knowledge; (c) concentrating all potential litigation concerning the WARN Act rights of the proposed Settlement Class Members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all proposed Settlement Class Members; (d) administration of this action as a class action will not be complicated or difficult because the names and addresses of the proposed Settlement Class Members have been established from available records unless otherwise instructed by the proposed Settlement Class Member or as updated through the efforts of Class Counsel.

42.     For the foregoing reasons, the Parties seek a Court order certifying this case as a class action for settlement purposes only, and appointing The Gardner Firm, P.C., Fishman

FP 52897623.2
FP 53017008.1

Haygood, LLP and Lankenau & Miller, LLP, as class counsel and appointing Theresa VanBuren, Monica Miller, Captain Bertrand M. Suarez and Captain John Cook as the Class Representatives.

**C.    The Court Should Preliminarily Approve the**
**Settlement Agreement Pursuant to Civil Rule 23**

43.    After class certification, approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates v. Rohm & Hass Co.,* 248 F.R.D. 434, 442-43 (E.D. Pa. 2008); MANUAL FOR COMPLEX LITIGATION § 21.632 (2004). Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members. At the subsequent fairness hearing, class members may formally object to the proposed settlement. *Gates,* 248 F.R.D. at 438-39.

44.    "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Id.,* at 438 (*quoting from Smith v. Prof'l Billing & Mgmt. Servs., Inc.,* 2007 WL 4191749, at *1 (D. N.J. 2007)). The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re GMC Pick-Up Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995); *Gates,* 248 F.R.D. at 444.

45.    The Settlement Agreement has no obvious deficiencies and falls well within the range of reason. Further, each of the above-cited factors weighs in favor of preliminary approval of the Settlement Agreement.

46.    First, the Settlement is the result of good faith, arm's-length negotiations between capable adversaries. The Parties have been in discussions with respect to the  Action since March 2024, and the Settlement Class is represented by counsel with extensive experience and expertise

in WARN Act matters.  *See* Ex. D, Olsen Declaration.

47.     Second, the Parties informally exchanged significant information and documents during their negotiations relating to class certification, damages and Defendant's defenses.

48.     Third, Class Counsel have collectively been appointed as class counsel in well over 100 WARN Act cases. Class Counsel has the experience and skill both to vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate. They have exercised that judgment in this case with respect to the Settlement Agreement.

49.     Accordingly, the Court should preliminarily approve the Settlement Agreement.

**D.      The Court Should Approve the Form and Manner**
**of the Proposed Notice of the Settlement**

50.      Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. FED. R. CIV. P. 23(e). The Rule 23(e) requirement is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 326-27 (3d Cir. 1998).

51.     The proposed Notice, which is attached as Exhibit 1 to the Settlement, will be served by the Settlement Administrator, upon each Settlement Class Member. The Parties propose that within fifteen (15) calendar days following entry of the order preliminarily approving the Settlement Agreement, the Settlement Administrator will prepare and serve the Notice substantially in the form attached to the Settlement as Exhibit 1, upon each Settlement Class Member at the last known address of each Settlement Class Member according to the Defendant's books and records (or as may otherwise be determined). Individual mailings to each class member's last known address have been held appropriate. See, e.g., *Jones v. JGC Dallas LLC*,

2012 U.S. Dist. LEXIS 185042 (N.D. Tex. Nov. 29, 2012).

52.     The Notice satisfies Rule 23(e).  The Notice outlines the terms of the Settlement Agreement, including the attorneys' fees and expenses proposed to be paid to Class Counsel and describes how each Settlement Class Member may obtain a copy of the Settlement Agreement or may contact Class Counsel by telephone or electronic mail for more information. The Notice also states the date, time, location and purpose of the Fairness Hearing, informs each Settlement Class Member of their right to appear at the Fairness Hearing, and describes the procedure for objecting to the Settlement Agreement. Finally, the Notice will contain a personalized attachment for each Settlement Class Member setting forth the projected pre-tax dollar amount allocated to them from the Total Settlement Fund, after the deduction of the Service Payments, Class Counsel's Fees and Class Counsel's Expenses. Accordingly, the form and manner of the Notice is sufficient and should be approved.

**E.     The Court Should Finally Approve the Settlement
at the Fairness Hearing Pursuant to Civil Rule 23**

53.     The Court should set a Fairness Hearing that, subject to the Court's calendar, would be heard no sooner than the earliest date for entry of a binding order under 28 U.S.C. § 1715(d), which shall be no earlier than 100 days following the filing of this Motion.  At the Fairness Hearing, the Court should finally approve the Settlement.

54.     Civil Rule 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). Final approval of a settlement pursuant to Civil Rule 23(e) turns on whether the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement

21

is in the best interest of those whose claims will be extinguished." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.,* 2008 WL 3833271 at * 5 (*quoting GMC*, 55 F.3d at 785.).

55.     The Fifth Circuit has held that the following six (6) factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Reed v. General Motors* Corporation, 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)).

56.     The following facts strongly support approval of the Settlement Agreement.

- The Settlement Agreement was reached after the essential facts and applicable law had been thoroughly researched and reviewed by Class Counsel and discussed with Defendant's Counsel. The Parties prepared for and participated in a formal mediation on August 27, 2024, which was followed by over a month of continuing negotiations before reaching a resolution after the Parties accepted a mediator's proposal.

- Continued litigation will be complicated, protracted and expensive.

- The Class Representatives support the Settlement Agreement and Class Counsel believe that the other Settlement Class Members will have a favorable reaction to the Settlement Agreement and will not object to it.

- The Settlement Agreement spares the Defendant the significant expense and uncertainty associated with the litigation of the myriad of issues in the Action and guarantees a recovery for Plaintiffs and the Settlement Class Members, who otherwise may not recover anything, or may recover a smaller amount.

- When considered in light of the best possible recovery and the attendant risks, the settlement provides more than 60% of the priority wage damages calculated by Class Counsel for the Settlement Class and falls well within the range of reasonableness.

57.     Based on the foregoing, the Court should finally approve the Settlement Agreement under Civil Rule 23.

## **<u>CONCLUSION</u>**

WHEREFORE, the Parties respectfully request that the Court enter orders, substantially in the proposed form annexed hereto as <u>Exhibits B</u> and <u>C</u>: (i) granting the Joint Motion in its entirety; (ii) authorizing the Parties to enter into the Settlement Agreement; (iii) preliminarily approving the Settlement; (iv) approving the form and manner of Notice; (v) scheduling a Fairness Hearing; (vi) approving the Settlement Agreement on a final basis; and (vii) granting such other relief as the Court deems necessary and appropriate.

FP 52897623.2
FP 53017008.1

Dated: November 27, 2024

Dated: November 27, 2024

By: */s/  Matthew R. Korn*____
**FISHER & PHILLIPS LLP**
J. Hagood Tighe (*admitted pro hac vice*)
Matthew R. Korn (*admitted pro hac vice*)
htighe@fisherphillips.com
mkorn@fisherphillips.com
1320 Main Street, Suite 750
Columbia, South Carolina 29201
Telephone: (803) 255-0000
Facsimile: (803) 255-0202

*Counsel to American Queen Steamboat*
*Operating Company, LLC,* et al.

-and-

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Eric D. Wade (TX Bar No. 00794802)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
ewade@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and –

*/s/ Brent B. Barriere*_____
**FISHMAN HAYGOOD L.L.P.**
Brent B. Barriere (TX Bar No. 24034091)
Jason W. Burge (TX Bar No. 24112316)
Tristan Manthey (TX Bar No. 24042731)
Julie S. Meaders (LA Bar No. 39984)
  (admitted *pro hac vice*)
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile : (504) 586-2520
bbarriere@fishmanhaygood.com
jburge@fishmanhaygood.com
tmanthey@fishmanhaygood.com
jmeaders@fishmanhaygood.com

-and-

**THE GARDNER FIRM, P.C.**
Mary E. Olsen
M. Vance McCrary
182 St. Francis Street; Suite 103
Mobile, AL 36602
Telephone: (251) 433-8100
molsen@thegardnerfirm.com
vmccrary@thegardnerfirm.com

-and-

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122
Email: stuart@lankmill.com

*Counsel to Plaintiffs and the Settlement Class*

24

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
Kyle J. Kimpler (admitted *pro hac vice*)
Sarah Harnett (admitted *pro hac vice*)
Kyle R. Satterfield (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
jadlerstein@paulweiss.com
kkimpler@paulweiss.com
sharnett@paulweiss.com
ksatterfield@paulweiss.com

*Counsel to the Reorganized Debtors*

FP 52897623.2
FP 53017008.1