United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 25, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 24-90155 |
| HORNBLOWER CONSULTING, | § | |
| LLC, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

### MEMORANDUM OPINION

Hornblower Consulting, LLC and its debtor affiliates move for summary judgment on their objection to Argonaut Insurance Company's indemnification claims and subrogation claims, including the asserted priority status of the subrogation claims. The claims relate to surety bonds issued on behalf of Hornblower by Argonaut under the Federal Maritime Commission regulations.

Hornblower's summary judgment is granted in part and denied in part.

## BACKGROUND

### I.   THE SURETY BONDS

Hornblower operated cruise, ferry, and maritime services internationally.   Before filing for chapter 11 protection, various Hornblower entities purchased surety bonds from Argonaut with an aggregate penal sum of $51,980,304.00.   In connection with these bonds, multiple Hornblower entities entered into a General Indemnity Agreement with Argonaut.   ECF No. 354 at 9.   Hornblower Group, Inc. also entered into a Collateral Security Agreement with Argonaut that secured Hornblowers' obligations under the Indemnity Agreement with approximately $5 million of collateral.

Two of the surety bonds were issued in connection with Federal Maritime Commission ("FMC") regulations[1] enacted in response to the COVID-19 pandemic. ECF No. 354 at 9. These bonds were acquired by American Queen Steamboat Operating Company, LLC (in the amount of $32,000,000) and Victory Operating Company, LLC (in the amount of $7,000,000). American Queen and Victory were affiliate debtors in the Hornblower bankruptcy case.

Prior to filing for bankruptcy, Hornblower cancelled all cruises operated by American Queen Steamboat Operating Company, LLC and Victory Operating Company, LLC (collectively "AQV"). Passengers were entitled to a refund of payments made for such cruises. ECF 354-1 at 9.

## II.   THE BANKRUPTCY PROCEEDINGS

On February 21, 2024, Hornblower and its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. That same day, Hornblower launched a refund website to facilitate refund claims for passengers who had prepaid or made a deposit for their cruises. On March 29, 2024, Hornblower sent a "denial" letter to all AQV passengers, allowing customers to file claims against Argonaut under the FMC surety bonds and FMC regulations. ECF No. 354 at 10.

On May 2, 2024, Argonaut filed proofs of claim against twelve Hornblower affiliates[2] in the aggregate amount of $51,980,304.00. These claims assert two theories of liability against Hornblower: (1) contractual and common law indemnity claims partially secured by

---

[1] The new regulations detail a process by which vessel passengers can submit claims for refunds under financial responsibility instruments (i.e. surety bonds) when nonperformance of transportation occurs. *See* Passenger Vessel Financial Responsibility, 86 Fed. Reg. 47,661 (proposed Aug. 25, 2021) (to be codified at 46 C.F.R. pt. 540).

[2] HMS Ferries – Puerto Rico, LLC, Alcatraz Island Services, LLC, Hornblower Holdco, LLC, Hornblower Group, LLC, Hornblower Shipyard, LLC, Hornblower Holdings LP, HNY Ferry II, LLC, Victory Operating Company, LLC, HMS Ferries, Inc., American Queen Holdco, LLC, Hornblower Group, Inc., and American Queen Steamboat Operating Company, LLC.

collateral, and (2) subrogation rights based on potential payments Argonaut may make in the future to Hornblower's customers.

As of July 18, 2025, Argonaut received about 5,037 claims from AQV passengers based on the AQV bonds. About 4,126 of the 5,037 claims were resolved either through payment, withdrawal, or denial. Argonaut has paid 2,046 of the claims in the aggregate amount of about $20,233,929.80. About 911 of the received claims remained pending as of July 18, 2025.

On June 7, 2024, the Court confirmed Hornblower's Chapter 11 Plan of Reorganization, with a July 3, 2024 effective date. ECF No. 1388. When the Court confirmed the plan, the Court held that Argonaut's subrogation rights were not entitled to priority under § 507(d). Case No. 24-90061, ECF No. 1387. Argonaut appealed solely on that issue and sought a stay pending appeal, which was denied. Case No. 24-90061, ECF No. 1503.

III.   THE CLAIM OBJECTIONS

On May 28, 2024, Hornblower filed its original objection to the claims by Argonaut. ECF No. 1194. On July 26, 2024, Hornblower amended its objection. ECF No. 1720. Argonaut responded to Hornblower's objection on August 26, 2024.

On June 27, 2025, Hornblower moved for summary judgment on its claim objection. ECF No. 354. On July 18, 2025, Argonaut filed its response. ECF No. 382.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact means that evidence is such that a reasonable fact finder "could return a verdict for the nonmoving party." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). It is the movant's burden to establish that no genuine issue of material fact exists. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank*, 429 F.3d 556, 562 (5th Cir. 2005)). A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). If the movant establishes "the absence of evidence supporting an essential element of the non-movant's case," the burden shifts to the non-movant to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326 (citing *Condrey*, 429 F.3d at 562).

In ruling on a motion for summary judgment, a court should view the facts and evidence in light most favorable to the non-moving party. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Env't Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015). The Court need only consider the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996). A credibility determination may

not be part of the summary judgment analysis.  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

## DISCUSSION

Hornblower seeks summary judgment holding that: (1) Argonaut's Indemnification Claims are disallowed; (2) the Subrogation Claims are not entitled to priority under 11 U.S.C. § 507; and (3) the Subrogation Claims are General Unsecured Claims, treated under Class 5 of the Plan.

## I.   ARGONAUT'S INDEMNIFICATION CLAIMS ARE DISALLOWED IN PART

Section 502(e) of the Bankruptcy Code requires the Court to "disallow any claim for reimbursement or contribution of an entity that is liable with the debtor or has secured the claim of a creditor, to the extent that . . .

> (B) such claim for reimbursement is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or

> (C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title."

11 U.S.C. §§ 502(e)(1)(B), (C).  The purpose of § 502(e) is to prevent a creditor from double-recovery against the estate.  *See* COLLIER ON BANKR. ¶ 502.06 (16th 2025).

Hornblower argues that Argonaut's indemnification claims should be disallowed because Argonaut asserts subrogation claims for the same debts.  But under § 509(a), Argonaut only has subrogation rights with respect to the AQV passenger claims that have been paid.  Section 509(a) provides: "[A]n entity that is liable with the debtor on, or that has secured a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment."  11 U.S.C. § 509(a).  Section 509(a) "establishes that a

codebtor's right of subrogation arises only when and to the extent that the codebtor pays the assured creditor." *Aetna Cas. & Surety Co. v. Ga. Tubing Co.*, No. 93 Civ. 3659 (LAP), 1995 WL 429018, at *4 (S.D.N.Y July 20, 1995), *aff'd*, 93 F.3d 56 (2d Cir. 1996) (emphasis added).

As of July 18, 2025, Argonaut was still in the process of reconciling claims by AQV passengers. Argonaut had paid 2,406 claims but still had over one thousand outstanding claims to reconcile. As of that date, Argonaut's right to subrogation existed with respect to the 2,046 claims that had been paid. Under § 502(e)(1)(C), Argonaut may not simultaneously assert indemnification and subrogation for the same obligations. Accordingly, the indemnification claims corresponding to the 2,046 paid claims are disallowed.

The Court notes that, on payment, Argonaut had the right to either indemnification or to subrogation. It could have elected either remedy. But, when it asserts both remedies for the same payment, §§ 502(e) and 509, read together, mandate that the subrogation claim is allowed and the indemnification claim is disallowed.

With respect to the subrogation claims for which Argonaut has not paid AQV passengers, those subrogation claims remain contingent and must be disallowed under § 502(e)(1)(B). The purpose of § 502(e)(1)(B) is to "allow[] for the expeditious resolution of issues so as not to burden the estate by claims which have not come to fruition." *Aetna*, 1995 WL 429018, at *3 (citations and quotations omitted). Many courts have disallowed assertions of contingent or prospective subrogation rights for this reason. *See, e.g., In re Smith*, No. 13-81362, 2014 WL 13121393, at *6 (Bankr. M.D.N.C. June 3, 2014). The unpaid AQV passenger claims remain contingent and any assertion of subrogation based on those claims must be disallowed.

Ultimately, the Court must disallow indemnification claims corresponding to the fixed subrogation claims at this time. Disallowance of the indemnification claims is without prejudice. Under § 502(j),

Argonaut may seek reconsideration of the allowance or disallowance of claims as circumstances change.

## II.   ARGONAUT'S SUBROGATION CLAIMS ARE NOT ENTITLED TO PRIORITY UNDER § 507

The parties dispute whether Argonaut's subrogation claims are entitled to priority under § 507 of the Bankruptcy Code.  Section 507(d) provides:

> An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(1), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8) . . . or (a)(9) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

11 U.S.C. § 507(d).  Although § 1129(a)(9)(B) requires full payment of § 507(a)(7) deposit claims, § 507(d) strips Argonaut, as the subrogee, of these priority rights.  Case No. 24-90061, ECF No. 1387.

Argonaut's Subrogation Claims are not entitled to priority.

## III.   ARGONAUT'S SUBROGATION CLAIMS ARE NOT SECURED

The parties dispute whether Argonaut's subrogation claims are secured by Collateral.  The General Indemnity Agreement obligates Hornblower to indemnify Argonaut for "any and all Losses" arising from its issuance of surety bonds.  ECF No. 382 at 65.  The Collateral Security Agreement grants Argonaut a first-priority security interest in certain collateral to enforce that indemnity.  ECF No. 382 at 89.  Argonaut contends that its subrogation rights fall within the General Indemnity Agreement's definition of "Losses."  Losses include (among other things not relevant here):

> (a) sums paid by Surety to claimants under the Bonds,

> (b) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds . . . .

ECF No. 382 at 65, 89 (The Collateral Security Agreement adopts the meaning of "Losses" from the General Indemnity Agreement).

The language of the Collateral Security Agreement only secures Hornblower's obligations to Argonaut under the General Indemnity Agreement. ECF No. 382 at 89. Those rights are separate and distinct from subrogation, which arises under § 509 of the Code.

While Argonaut's subrogation rights are preserved under the Agreement, see ECF No. 362 at 67, a subrogee cannot obtain greater rights than its subrogor had, regardless of whether the subrogation is equitable or conventional. *See Admiral Towing v. Seatrain Int'l, S.A. (In re Complaint of Admiral Towing & Barge Co.)*, 767 F.2d 243, 250 (5th Cir. 1985). In this case, the subrogors are the AQV passengers who hold unsecured refund claims. Because Argonaut steps into the shoes of the AQV passengers once it pays on the bond, Argonaut's subrogation claims are likewise unsecured.

Argonaut is correct in asserting that § 506(d)(1) preserves the Collateral securing Argonaut's indemnification claims, even if those claims are disallowed under § 502(e). Normally if a claim is disallowed, its lien is rendered void. But § 506(d)(1) provides a carve out and preserves the lien if the claim is disallowed under § 502(e). Nevertheless, § 506 cannot be used to attach the preserved lien onto a different type of claim, such as a subrogation claim.

The Plan and Confirmation Order provide:

> any subrogation claims asserted by Argonaut . . . in relation to payments on account of customer refund claims associated with the AQV Debtors shall . . . constitute Class 5 – General Unsecured Claims that are not entitled to priority pursuant to section 507 of the Bankruptcy Code or otherwise.

Case No. 24-90061, ECF No. 1388. Argonaut only appealed the Confirmation Order with respect to the priority status of its subrogation

rights.  This portion of the dispute deals only with Argonaut's secured status.   Whether Argonaut has security was determined by the Confirmation Order.  It has not been appealed.  The Court must enforce the Confirmation Order.

Argonaut's subrogation rights are unsecured.

## CONCLUSION

A separate order will be entered.

SIGNED 09/25/2025

Marvin Isgur
United States Bankruptcy Judge